UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIBERTY MUTUAL INSURANCE CO.,

       Plaintiff,

v.

Case Number 12-14448
Honorable Thomas L. Ludington

JILL DAVENPORT, Next Friend of
D.D., and KELLY MCCLINTIC,

       Defendants.

_____ /

OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Does a homeowners insurance policy's exclusion from coverage apply? That is the question in this declaratory judgment case. For the reasons that follow, the question is answered in the affirmative.

**I**

**A**

Since 1997, Defendant Kelly McClintic has operated a day care business from her home, located at 520 E. Summit St. in Breckenridge, Michigan. Def. Dep. 11–12, Oct. 31, 2012, *attached as* Pl.'s Mot. Ex. 6. It is a business, McClintic acknowledges; she is compensated by her customers and operates the day care to produce a profit. *See, e.g.*, Def.'s Answers to First Req. to Admit Nos. 2–4, *attached as* Pl.'s Mot. Ex. 5.

McClintic further acknowledges that she is licensed by the state and that operating the day care is her occupation. See, e.g., Def. Dep. 7, 135–36. In her deposition, for example, McClintic was asked:

> Q: And what is your occupation?
>
> A: Licensed day care.

Def. Dep. 7. The business operates from 6 am to 5:30 pm. Def. Dep. 18–19. At the time of the incident giving rise to this litigation (July 25, 2011), the business was providing day care for eight children. Def. Dep. 136–38. One had been a client for about nine years. Def. Dep. 38. Others had been clients for several years. Def. Dep. 38–40. And still others had been clients for only a couple of months. Def. Dep. 28.

**B**

In April 2011, McClintic applied for a homeowners insurance policy from Liberty Mutual Insurance Co. *See* Def. Homeowners Policy Appl., *attached as* Pl.'s Mot. Ex. 3. Page three of the application has a list of 11 questions. *See id.* at 3. Questions four and five ask:

> 4. Is there any business conducted on the premises?
>
> 5. Are home daycare services provided on the premises?

*Id.* For both, McClintic's application answers "No." *Id.* The final page of the application cautions that false answers in the application void the policy, explaining:

> [T]his form and the answers provided by you to questions asked as a part of the application process shall be the basis of the contract should a policy be issued. If any questions appearing on this application, or asked as a part of the application process have been answered falsely or fraudulently this entire insurance is null and void and all claims thereunder shall be forfeited.

*Id.* at 4. McClintic's signature appears below this paragraph. *Id.* McClintic acknowledges that this is her signature. *See, e.g.*, Def.'s Answer to First Req. to Admit No. 7. But McClintic denies that she was ever asked for "any information" when applying for the policy. Def. Dep. 118. In her deposition, for example, she was asked:

> Q: In the course of applying for your policy did you ever have to provide any information about whether you ever ran a business in your home?

> A: No.
>
> Q: You didn't have to provide that information?
>
> A: They never asked for any information.

Def. Dep. 118. Regardless, it is undisputed that after McClintic submitted the application, Plaintiff issued McClintic a homeowner's policy with a policy period of April 8, 2011 to April 8, 2012. *See* Def. Homeowners Policy.

McClintic acknowledged in her deposition that the policy does not have a day care rider. Def. Dep. 118. She further acknowledged that she did not read the policy. Def. Dep. 118.

Section I of the policy provides property coverage, subject to exclusions. Section II provides liability coverage, again, subject to exclusions. The first enumerated exclusion of liability coverage provides:

> 1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":
>
>    . . .
>
>    b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

*Id*. at 11. "Business," the policy specifies, "includes [a] trade, profession or occupation." *Id*. at 1.

## C

On the morning of July 25, 2011, one of the seven or eight children McClintic was providing day care for in her home was D.D. (age 1). *See* Def.'s Answer to First Req. to Admit No. 1; Def. Dep. 136–38.

-3-

At the time, she had been providing day care services to D.D. for about two months. Def. Dep. 28. D.D. came to McClintic's day care Monday through Thursday. Def. Dep. 32. In exchange for caring for him, McClintic was paid $180 per week. Def. Dep. 33.

On the morning of July 25, 2011, a dog that McClintic was also caring for bit D.D. on the cheek. Def. Dep. 77. McClintic "knew it was bad." Def. Dep. 77. She called 911 and went to the emergency room. Def. Dep. 77. This litigation followed.

**D**

D.D.'s mother, Defendant Jill Davenport, filed suit on behalf of her son against McClintic in state court. *See* Compl., *Davenport v. McClintic*, No. 11-11677 (Gratiot Cir. Ct. 2011), *attached as* Pl.'s Mot. Ex. 2. The complaint seeks compensation for the dog bite.

Plaintiff, in turn, filed suit against McClintic and Davenport in this Court seeking a declaration that it owes no duty to provide coverage or a defense to McClintic in the underlying state court action.

Plaintiff moved for summary judgment in April 2013. The following month, McClintic responded — but did not oppose — the motion. (Davenport did not respond, much less oppose the motion.)

**II**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the

opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

### III

### A

The parties agree that Michigan law applies to the insurance policy. Under Michigan law, "[a]n insurance policy is much the same as any other contract." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992); *cf.* Richard Posner, *Economic Analysis of Law* § 4.5 (6th ed. 2003) (analyzing insurance contracts and "contracts as insurance").

The Michigan Supreme Court instructs that "any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Auto-Owners Ins. Co.*, 489 N.W.2d at 434 (1992) (bracket omitted) (quoting *Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 314 N.W.2d 440 (Mich. 1982)).

Business pursuit exclusions in homeowners policies (including as applied to operating a day care business in the home) do not contravene Michigan public policy. *E.g.*, *State Mut. Ins. Co. v. Russell*, 462 N.W.2d 785, 788 (Mich. Ct. App. 1990).

"Clear and specific exclusions must be given effect," the Michigan Supreme Court instructs, explaining: "It is impossible to hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins. Co.*, 440 Mich. 560, 567, 489 N.W.2d at 434 (citing *Kaczmarck v. La Perriere*, 60 N.W.2d 327 (Mich. 1953)).

Here, the policy's business exclusion unequivocally excludes Plaintiff's liability "[a]rising out of or in connection with a 'business.'" Business is defined to include an insured's "occupation." McClintic acknowledges that the day care business is her occupation. The

underlying state court litigation arises directly out of McClintic's business. Accordingly, no coverage exists. Plaintiff is entitled to summary judgment.

**B**

McClintic, as noted, does not argue against this conclusion — at least not expressly. In her one paragraph response to Plaintiff's motion, McClintic tersely writes that she "will not be submitting a specific answer or brief per se in regard to said motion but rather will rely upon all pleadings Defendant has previously submitted in this matter."

If this is an implicit acquiescence to enter summary judgment in Plaintiff's favor, for reasons detailed the assent is well-founded. If, however, the response is an implicit invitation to the Court to independently search the record for genuine issues of material fact, the invitation must be declined. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992). The Sixth Circuit instructs that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.*

Plaintiff is entitled to judgment as a matter of law.

**IV**

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment (ECF No. 14) is **GRANTED**.

                                                               s/Thomas L. Ludington
                                                               THOMAS L. LUDINGTON
                                                               United States District Judge

Dated: May 28, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 28, 2013.

> s/Tracy A. Jacobs
> TRACY A. JACOBS